IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Kim Alford, | Civil Action No. 9:13-cv-1166-SB-BHH |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Wang, Inc., d/b/a Dunkin' Donuts and Chi Y. Wang, | |
| Defendants. | |

This matter is before the Court on the defendants' partial motion to dismiss [Docs. 7, 8], pursuant to Federal Rules of Civil Procedure 12(b)(6). The plaintiff alleges that she was discriminated and retaliated against because of her sex and pregnancy in violation of Title VII of the Civil Rights Act of 1964. The plaintiff also alleged a state law claim for defamation.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment cases are referred to a United States Magistrate Judge for consideration.

**FACTUAL BACKROUND**

The plaintiff asserts she began working at Dunkin' Donuts in February of 2010 as a drive-through order taker and was later promoted to opening shift manager. (Compl. ¶¶ 8, 10.) Around March 2011, the plaintiff informed Defendant Chi Y. Wang that she was pregnant. (Compl. ¶ 12.) In April 2011, the plaintiff asserts that she "assumed the duties of Assistant Manager" and that, in May 2011, she "assumed all duties of the morning Manager," but was not compensated for these assumed roles. (Compl. ¶¶ 13, 14.) The

plaintiff contends that Defendant Wang told her he could not place her in the management position because she was pregnant.  (Compl. ¶ 15.)  In June 2011, the plaintiff alleges her hours were severely cut and two other individuals were promoted to the positions of manager and assistant manager.  (Compl. ¶ 17, 18.)

The plaintiff contends that she filed a charge of discrimination with the Equal Employment Opportunity Commission, on August 17, 2011, although in actuality it appears that she submitted an intake questionnaire at that time. (Compl. ¶ 19.)   The plaintiff gave birth to her child, in September 2011, and sought the assistance of an attorney to return to her position at Dunkin' Donuts, in October 2011, at which time the plaintiff asserts she was demoted to a cashier.  (Compl. ¶¶ 20, 21.)  The plaintiff further alleges that Defendant Wang told other employees that she was demoted because she was stealing from the store and she was a racist. (Compl. ¶ 24.)

In February 2012, the defendants were notified of the plaintiff's charge of discrimination and the agency's investigation. (Compl. ¶ 25.) Approximately a week after announcing she was pregnant again, the plaintiff claims she was suspended for two weeks because of an alleged customer complaint. (Compl. ¶ 27.) Due to these allegedly intolerable working conditions during March 2011 and continuing through April 2012, the plaintiff asserts she was forced to quit her job.  (Compl. ¶ 28.)

The plaintiff, thereafter, requested a Notice of Right to Sue letter from the EEOC, thereby effectively terminating the EEOC's investigation and processing of her charge. The EEOC issued the Right to Sue letter on January 31, 2013. (Compl. ¶ 5.)

## APPLICABLE LAW

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief.  In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should

view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Stated differently, "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)).

## DISCUSSION

**I.     Title VII Claims**

The defendants first contend that the plaintiff's Title VII claims for retaliation and constructive discharge should be dismissed or substantially limited. Specifically, the defendants argue that the plaintiff failed to administratively exhaust any such claims before the Equal Employment Opportunity Commission.

Prerequisite to bringing a judicial action, it is well-understood that a plaintiff in South Carolina must file a charge of discrimination within 180 days (for claims arising under South Carolina Human Affairs Law) or 300 days (for claims arising under Title VII, since South Carolina is a deferral state) after the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e–5; S.C. Code § 1-13-90; *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009); *Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 138-40 (4th Cir. 1995).

As the defendants emphasize, the scope of a Charge of Discrimination limits the scope of any subsequent litigation; claims not included in the charge of discrimination are

barred from judicial review. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 509, 513 (4th Cir. 2005); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 963-64 (4th Cir. 1996) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit."); *see also Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).

The plaintiff's Charge of Discrimination was filed February 10, 2012. [Doc. 8-1.] On it, she checked a single box for the basis of her Charge: sex. *Id*. She did not check the "retaliation" box. The plaintiff indicated that the "earliest" date of discrimination was May 26, 2011, and that the "latest" date was July 3, 2011. *Id*. The "Particulars" of the Charge allege that between May 26 and July 3, 2011, she was denied a promotion, her hours were reduced, and she was removed as store manager. *Id*. She contends that she was told by the owner of the store that she had lost hours and been denied the promotion due to her pregnancy and because she had contacted an employee from the defendant's corporate office. *Id*. Those allegations define the permissible scope of this lawsuit. Accordingly, the question is whether a constructive discharge or retaliation claim can now be brought pursuant to Title VII. The Court would start with the former.

### A.    Constructive Discharge

The plaintiff has not pled a constructive discharge claim and, respectfully, no such thing exists.[1]    She has pled a discrimination claim based on her sex and pregnancy

---

[1] It is the undersigned's view and experience that the constructive discharge concept is the legal fiction by which wrongful termination claims are salvaged where no actual termination or other adverse employment action has, in fact, occurred. In other words, constructive discharge is an element of a structurally larger claim, *to wit*, Title VII, Section 1983, the South Carolina Whistleblower Act, as opposed to some legal end unto itself. Case law would seem to bear this out. *See, e.g., Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 186 (4th Cir.2004) (discussing constructive discharge in the context of wrongful termination, Title VII, and Section 1981 claims); *Goldsmith v. Mayor & City Council of Baltimore*, 987 F.2d 1064, 1072 (4th Cir.1993) (discussing constructive discharge in the context of a state law claim for intentional interference with contract and prospective advantage).
    Indeed, the plaintiff has used the constructive discharge concept in precisely this way and

pursuant to Title VII, in a way wholly consistent with her Charge of Discrimination. (Compare Compl. ¶¶ 33-35 with [Doc. 8-1].)  In the cause-specific paragraphs of the Complaint, the plaintiff incorporates, by reference, prior averments alleging, identically to the Charge, the failure to promote, reduction in hours, and removal as store manager.  (See Compl. ¶¶ 14-18, 36-37.)  She has pled a sex/pregnancy discrimination claim and it is exhausted.  The fact that the plaintiff includes the statement, "[a]ll such acts led to Plaintiff's constructive discharge from Defendant's employment," does not convert the plaintiff's claim into something altogether different.  She has alleged other possible adverse employment actions, including the denial of promotion *et al.*, which if established may support her discrimination claim.  (See Compl. ¶¶ 14-18.)

The defendants seem to contend that the plaintiff has also included in her claim for discrimination, different than her Charge, some significant amount of new allegation pertaining to the time frame prior to July 3.  The Court does not see it.  As is typical, the plaintiff has certainly given some longitudinal history of her employ with the defendants and, the Complaint is more specific in necessary detail, but the events alleged, for the better part, are identical.  There are a few allegations concerning write-ups given to the plaintiff after July 3, 2011, but before her Charge was filed in February 2012.  (Compl. ¶¶ 21, 22, 23.)  Because those were not a part of the original Charge and cannot be considered retaliation for the filing of the same (as the defendant was unaware of the Charge at the time of the write-ups (see Compl. ¶ 25)), they are technically unexhausted.  As the defendants contend, the Fourth Circuit Court of Appeals has instructed that when a person alleging discrimination determines they have additional bases for recovery, that their initial charge does not include, their recourse is to file an amended charge with the EEOC.  *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013).

---

has not, as the defendant contends, pled some claim for it.  (See Compl. ¶ 34.)

5

They need not be stricken but it is recommended that Paragraphs 21, 22, and 23 be deemed inactionable. That does not necessarily make them inadmissible or improvident, somehow.

**B.     Retaliation**

The plaintiff concedes that she did not Charge or otherwise exhaust any retaliation claim but argues that under Fourth Circuit law she was not required to do so. It is true that the rule of law in the Fourth Circuit is "that a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge." *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992). The Fourth Circuit explained, in *Nealon,* that such a view was the "inevitable corollary" of the rule that "the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." *Id*. Indeed, this precedent has been affirmed more recently by the Fourth Circuit, even in light of the United States Supreme Court's decision, in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)*.  See Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009).

The plaintiff's present claim for retaliation is expressly predicated on the defendant having taken "adverse employment actions against Plaintiff for filing a charge of discrimination with the EEOC." (Compl. ¶ 37.) Accordingly, it was "related to allegations contained in the charge" and the plaintiff was not obligated to have separately filed a charge concerning such alleged retaliation. *See Jones*, 551 F.3d at 301.

The defendants contend that the plaintiff alleges a number of retaliatory acts in her Complaint, which arose *prior* to the filing of her Charge in February 2012 and, which should not enjoy the shield of the *Nealon* rule, *see Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147 (4th Cir. 1999). (Reply at 2-3.) But, the Court does not see it. The acts alleged prior to February 2012 are all discrete incidents of discrimination, either properly exhausted by

6

the Charge or not, as previously discussed. Rather, the retaliation claim is specifically and only premised on the filing of the Charge, admittedly unknown to the defendant prior to February 2012. (Compl. ¶ 25, 37.) So the defendants' attempt to recharacterize certain pre-February 2012 averments as retaliatory, does not defeat the plaintiff's clear intent in the claim – that the retaliation claim be based on retaliatory events *subsequent* to the February 2012 charge. In other words, the plaintiff's "failure to include numerous retaliatory claims of which she was aware at the time her January 2012 EEOC charge" (Def. Reply at 4) is not any kind of meaningful objection. Those are not the bases of her retaliation claim.

Lastly, the defendants allege that the retaliatory acts alleged, subsequent to the February Charge, are of a new kind. Specifically, the defendant argues that the plaintiff has asserted a whole new incident of sex discrimination and retaliation based on a third pregnancy, in March 2012, which cannot be viewed as reasonably related to the substance of the original Charge for purposes of the *Nealon* rule. (See Compl. ¶ 26.)

But, again, the defendants have parsed too thinly. The plaintiff indeed mentions a third pregnancy. *See id.* But, as discussed, the plaintiff alleges that the retaliation was on account of her *having filed the February Charge* and nowhere does she allege retaliation for the third pregnancy. To the extent the defendants can demonstrate that the alleged retaliatory conduct was taken for any other reason, whether non-discriminatory or unexhausted, *to wit*, an additional pregnancy, the defendant will certainly prevail. But, at this time, the plaintiff has alleged that all retaliatory conduct subsequent to the February 2012 charge was on account of her having filed the Charge. That is permissible, notwithstanding a failure to exhaust it. *See Jones*, 551 F.3d at 301.

## II. Individual Liability

The defendants next contend that the plaintiff has improperly asserted claims against Defendant Chi Y. Wang in his individual capacity. As the defendants argue, Title VII limits liability for Title VII claims to the employer. Title VII provides, in part, that "[i]t shall be

an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). The Fourth Circuit has interpreted the word "individual" to mean the company employer and has concluded that "supervisors are not liable in their individual capacities for Title VII violations." *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). The court reasoned in *Lissau* that the only reasonable interpretation of Title VII is "to foreclose individual liability" because Title VII exempts small employers and "it would be incongruous to hold Title VII does not apply to the owner of a five-person company but applies with full force to a person who supervises an identical number of employees in a larger company." *Id*.

The plaintiff responds that Defendant Wang is a business owner and not a supervisor or employee. The Complaint alleges that Defendant Wang is the owner of Defendant Wang, Inc. It is not stated whether he is an individual owner of a Dunkin' Donuts or a franchisee.

But, even where an individual is effectively the alter ego of a closely held company or corporation, the circuit courts of appeals, which have considered it, all reject that any individual liability is exists. *See Dearth v. Collins*, 441 F.3d 931, (11th Cir. 2006); *Worth v. Tyer*, 276 F.3d 249, 262 (7th Cir.2001) (rejecting alter ego theory of individual capacity liability in Title VII lawsuit against the president of a company and citing *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1282 n. 11 (7th Cir.1995)). This has been deemed true even if "a sole shareholder abused the corporate form and the corporate veil were pierced." *AIC Security*, 55 F.3d at 1282 n.11 (concluding in *dicta*).

Even if somehow the opinion of other circuit courts of appeals was ignored, however, the plaintiff has not alleged the corporate form at issue in this case or the circumstances existing which would allow it to be disregarded.

8

The Court would recommend that all claims against Defendant Wang, in his individual capacity, should be dismissed.

## III.     Defamation

Finally, the defendants contend that the plaintiff's defamation claim has not been properly pled.  Under South Carolina law, a claim for defamation requires proof of the following elements: (1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Argoe v. Three Rivers Behavioral Health, LLC*, 710 S.E.2d 67, 74 (S.C. 2011).

The plaintiff alleges that "Wang told several other employees that Plaintiff had been demoted because she was stealing from the store and that she was a racist."  (Compl. ¶ 24.)  The plaintiff also asserts that "Defendant Wang falsely accused Plaintiff of the crime of embezzlement" and "maliciously published this falsity by communicating it to persons other than the Plaintiff."  (Compl. ¶¶ 42, 42.)

The defendants contend that the plaintiff has not sufficiently alleged the individuals to whom the defamatory statements were published.  *See Campbell v. International Paper Company*, 2013 WL 1874850, at *3 (D.S.C. May 3, 2013).  This case is not the same as *Campbell*. Here, the plaintiff has made more than a "formulaic" recitation that defamatory statements were made "publicly known."  *Id*.  The plaintiff has expressly identified "employees" of the defendant.  It is not impermissible that names are unknown.  That is what discovery affords.  The plaintiff has not made a blanketed accusation that a publication was simply somewhere made.  Instead, she has identified employees of the defendant, a finite number of identifiable individuals relevant to this case.  If she cannot ultimately prove them, so be it.

The claim should not be dismissed.

9

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is RECOMMENDED that the defendants' motion to dismiss [Docs. 7,8] should be GRANTED in part and DENIED in part. Specifically, the motion should be GRANTED as to any claims against Defendant Chi Y. Wang, which should be dismissed *with prejudice.* The motion should also be GRANTED with respect to any claims based on Paragraphs 21, 22, and 23 of the Complaint. The motion, however, should be DENIED in all other respects.

                 s/Bruce H. Hendricks
                 United States Magistrate Judge

November 25, 2013
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).