IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Kim Alford, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 9:13-1166-SB-BHH |
| v. | ) |
| | ) **ORDER** |
| Wang, Inc., d/b/a Dunkin' Donuts and Chi Y. Wang, | ) |
| | ) |
| Defendants. | ) |

This matter is before the Court upon the Plaintiff's complaint, which alleges that the Defendants discriminated and retaliated against her based on her sex and pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–e17 and 42 U.S.C. § 1981. On June 18, 2013, the Defendants filed a motion to dismiss, or in the alternative, for summary judgment. The matter was referred to United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g), D.S.C.

On November 25, 2013, the Magistrate Judge issued a report and recommendation ("R&R"), outlining the issues and recommending that the Court grant in part and deny in part the Defendants' motion to dismiss. Specifically, the Magistrate Judge recommended that the Court grant the motion as to the Plaintiff's Title VII claims against Defendant Chi Y. Wang[1] and as to any claims based on paragraphs 21, 22, and 23 of the complaint. Next, however, the Magistrate Judge recommended that the Court deny the motion in all



---

[1] Although the conclusion of the R&R recommends that the Court grant the Defendants' motion "as to any claims against Defendant Chi Y. Wang," this statement is slightly misleading because a review of the R&R indicates that the Magistrate Judge only recommended dismissal of the Plaintiff's Title VII claims asserted against Wang in his individual capacity. The Magistrate Judge did not recommend dismissal of the Plaintiff's defamation claim, which the Plaintiff asserts only against Defendant Wang.

other respects. Both sides filed timely written objections to the R&R, and the matter is ripe for review.

## STANDARDS OF REVIEW

I.   **The Magistrate Judge's R&R**

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility for making the final determination remains with the Court. Mathews v. Weber, 423 US. 261, 269 (1976). The Court reviews de novo those portions of the R&R to which a specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

II.  **Rule 12(b)(6) Motion to Dismiss**



To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombley, 550 U.S. 544, 556, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. The court must accept all well-pleaded facts as true and construe these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the claim. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255-56 (4th Cir. 2009). Legal conclusions, elements of a cause of action, and bare assertions devoid of further factual

2

enhancement fail to constitute well-pleaded facts for Rule 12(b)(6) purposes. See id. at 255. To survive a Rule 12(b)(6) motion, a complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks and citations omitted).

## BACKGROUND

According to her complaint, the Plaintiff began working for Defendant Wang, Inc., d/b/a Dunkin' Donuts ("Dunkin' Donuts") in February of 2010, on the morning shift. The Plaintiff claims that she was promoted to opening shift manager and received a salary increase. In or around March of 2011, however, the Plaintiff claims that she informed Defendant Chi Y. Wang ("Wang") that she was pregnant. The Plaintiff alleges that Wang is the "owner and operator" of Defendant Dunkin' Donuts and that he was her supervisor.

The Plaintiff states that she assumed the duties of assistant manager in April of 2011 when the former assistant manager, Jessica Shaw, was promoted to manager. According to the Plaintiff, when Wang informed her of her new salary, she pointed out that it was less than the hourly rate she received as a shift leader. The Plaintiff claims that Wang promised he would recalculate the Plaintiff's salary, but he never did, and so she was not compensated for her promotion and additional responsibilities.

The Plaintiff alleges that she singlehandedly assumed the duties of manager on May 17, 2011, after Jessica Shaw stopped working for Dunkin' Donuts. According to the Plaintiff, she was not compensated for the assumed role. The Plaintiff alleges that she confronted Wang about this, but he responded that he could not place her in the management position because she was pregnant.

The Plaintiff claims that she became violently ill at approximately 4:30 a.m. on June

12, 2011, while at work, and that Wang did not provide her relief until noon, at which time she reported to the emergency room. The doctor instructed the Plaintiff to stay out of work on her next scheduled workday, June 16, and the Plaintiff states that she provided a copy of the doctor's note to the Defendants on June 14, 2011, prior to her absence.

The Plaintiff states that when she returned to work on June 17, 2011, another store employee told her to take the rest of the week off and to speak to Wang about her future work schedule in light of her pregnancy. Thereafter, according to the Plaintiff, Wang severely cut her hours and almost never scheduled her for Manager shifts. During this time, Wang promoted two individuals with less experience than the Plaintiff to the positions of Manager and Assistant Manager.

The Plaintiff filed a charge of discrimination with the EEOC on August 17, 2011,[2]

---

[2] In the charge, the Plaintiff checked the box for discrimination based on sex, and she outlined the particulars of the case as follows:

    I.    I began my employment with the above-named employer in February 2010 as a Drive Thru Order Taker. In July 2010, I was promoted to Shift Leader. On May 26, 2011, I was denied a promotion to Assistant Manager. Beginning on or around June 17, 2011, my work hours were reduced. On July 3, 2011, I was removed from Shift Manager duties.

    II.    I was told by Chi Wang, Owner, that he was not going to promote me because of my pregnancy. I was told by Mr. Wang that my work hours were reduced because of my pregnancy, and because I contacted an employee from the corporate office. No reason was given for removing me from Shift Manager duties.

    III.    I believe that I have been discriminated against because of my sex (female due to pregnancy), in violation of Title VII of the Civil Rights Act of 1964, as amended.



(Entry 8-1 at 2.)

4

and she gave birth on September 15, 2011. The Plaintiff alleges that when she returned from work after having her second child, Wang told other employees that she had been demoted because she was stealing from the store and because she was a racist.

In February of 2012, the Defendants were notified by the EEOC of the Plaintiff's charge of discrimination and the agency's investigation.

The Plaintiff claims that she informed the Defendants on March 26, 2012, that she was pregnant with her third child and that she expected to continue on her schedule as it was–the full-time morning shift. The Plaintiff also states that she told the Defendants that her expected due date was September 5, 2012, and that she requested a four-week maternity leave.

According to the Plaintiff, on April 2, 2012, another employee informed her that she was being suspended for two weeks due to an alleged customer complaint. The Plaintiff states that she never received a copy of the complaint or write-up from Wang, despite her request for copies. The Plaintiff believes that there was no complaint and that the suspension was in retaliation for her filing a claim with the EEOC and announcing her pregnancy. The Plaintiff terminated her employment with the Defendants as of April 15, 2012. The Plaintiff received a Notice of Right to Sue letter from the EEOC on January 31, 2013, following which she filed this action.

## DISCUSSION

### I. The Plaintiff's Title VII Claims

In their motion, the Defendants first contend that the Court lacks subject matter jurisdiction over the Plaintiff's Title VII claims because the Plaintiff did not check the

"continuing action" box or the "retaliation" box on her EEOC charge and only checked the box for sex discrimination. In addition, the Defendants argue that the EEOC charge alleged discrimination beginning at the earliest on May 26, 2011, and at the latest on July 3, 2011, while the complaint includes allegations covering March 2011 through April 2012.

In the R&R, the Magistrate Judge agreed with the Defendants that the scope of the Plaintiff's Charge of Discrimination limits the scope of subsequent litigation. Therefore, the Magistrate Judge considered whether the Plaintiff could bring a constructive discharge or retaliation claim in light of her EEOC charge. The Magistrate Judge first noted that no such thing as a constructive discharge claim exists; nevertheless, because the Plaintiff alleged other adverse employment actions in her EEOC charge, such as the failure to promote, the reduction of hours, and her removal as manager, the Magistrate Judge concluded that the Plaintiff could proceed with her sex discrimination claim. Next, with respect to the allegations in paragraphs 21, 22, and 23 of the Plaintiff's complaint, which concern events occurring after July of 2011 but before the Plaintiff filed her Charge in February of 2012, the Magistrate Judge agreed with the Defendants that such claims are technically unexhausted (because they were not part of the original Charge or any amended charge) and are therefore non-actionable. Nevertheless, the Magistrate Judge saw no reason to physically strike them from the complaint.

The Magistrate Judge also considered whether the Plaintiff could proceed with her retaliation claim in light of her failure to check the "retaliation" box on her EEOC charge. The Magistrate Judge determined that the Plaintiff was not obligated to have filed a separate charge regarding the alleged retaliation because the Plaintiff's claim stems from the "adverse employment actions against Plaintiff for filing a charge of discrimination with

the EEOC." (Compl. ¶ 37; Entry 14 at 6.) In support of her conclusion, the Magistrate Judge cites Nealon v. Stone, 958 F.2d 583, 590 (4th Cir. 1992), where the Court of Appeals for the Fourth Circuit adopted the position that a plaintiff asserting a Title VII claim of retaliation based on the filing of a previous EEOC charge may raise the retaliation claim for the first time in federal court.

The Defendants object to this portion of the R&R, arguing that the allegations in the Plaintiff's complaint span a period of March of 2011 through April of 2012 and that they include a number of allegedly discriminatory and/or retaliatory acts that were not set forth in the Plaintiff's EEOC charge. The Defendants again ask that the Court strike paragraphs 21 through 23 and 25 through 27 of the Plaintiff's complaint, which pertain to alleged discriminatory acts that either the Plaintiff either had knowledge of prior to filing her charge or that relate to a subsequent pregnancy that was not part of the original EEOC charge.

As previously mentioned, the Magistrate Judge deemed paragraphs 21, 22, and 23 of the Plaintiff's complaint non-actionable because they address events that took place between October of 2011 and January of 2012; however, the Magistrate Judge did not recommend striking them from the complaint. In addition, the Magistrate Judge saw no reason to strike paragraphs 25 through 27 from the Plaintiff's complaint simply because they mention a third pregnancy, which was not part of the original EEOC charge.



After consideration, the Court agrees with the Magistrate Judge that paragraphs 21, 22, and 23 are non-actionable and that the Plaintiff may not seek recovery based on these allegations because they have not been administratively exhausted. With respect to the Defendants' objection that the Court must strike these paragraphs, the Court first notes that the Defendants did not file a motion to strike or otherwise request this drastic remedy

in their actual motion.³ In any event, the Court agrees with the Magistrate Judge that these paragraphs need not be stricken from the complaint. Although they are not *actionable*, they are not *necessarily* inadmissible, immaterial, or impertinent.

Next, however, the Court agrees with the Defendants that the Magistrate Judge was incorrect when she stated that "nowhere does [the Plaintiff] allege retaliation for her third pregnancy." (Entry 14 at 7.) Indeed, the Plaintiff does allege retaliation for her third pregnancy in paragraph 27 when she states "that the suspension was in retaliation for her filing a claim with the EEOC **and announcing her pregnancy**." (Entry 1 ¶ 27 (emphasis added).) Nevertheless, as the Magistrate Judge noted, the Plaintiff has alleged that retaliatory conduct subsequent to the EEOC charge was on account of her having filed the charge, and "[t]o the extent the defendants can demonstrate that the alleged retaliatory conduct was taken for any other reason, whether non-discriminatory or unexhausted, *to wit*, an additional pregnancy, the defendant will certainly prevail." (Entry 14 at 7.) Thus, the Court agrees with the Magistrate Judge that any references to the Plaintiff's third pregnancy in paragraphs 25 through 27 would be non-actionable as unexhausted.⁴ Again, however, the Court does not find it necessary to resort to the drastic remedy of striking

---

³ Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A A. Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380, 647 (2d ed.1990)).

⁴ Paragraph 25 states: "During February of 2012, Defendants were notified by the EEOC of Plaintiff's charge of discrimination and the agency's investigation." (Entry 1 ¶ 25.) The Court cannot ascertain what this has to do with the Plaintiff's third pregnancy other than the fact that it came before the Plaintiff's March 2012 announcement.

8

these paragraphs, or the references.

Lastly, with respect to the Plaintiff's allegations of "constructive discharge," the Magistrate Judge found no such claim to exist. Based on that finding, the Defendants ask the Court to strike the references to constructive discharge from paragraphs 28 through 34 of the complaint. Here again, the Court agrees with the Magistrate Judge's finding that no such claim exists. Moreover, under the circumstances, the Court does not believe it is necessary to resort to the drastic remedy of striking these references.

## II.     Defendant Wang's Individual Liability under Title VII

In the R&R, the Magistrate Judge agreed with the Defendants that Plaintiff improperly asserted Title VII claims against Defendant Wang in his individual capacity, based on Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 180 (4th Cir. 1998). The Plaintiff objects to this portion of the R&R and asserts that "both the federal statute and case law clearly allow a plaintiff to proceed against an individual employer for discrimination claims under Title VII." (Entry 18 at 2.)

Title VII provides, in relevant part: "It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). It then defines employer as "a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such a person." Id. § 2000e(b). The statute does not define the term "agent." In Lissau, the Court of Appeals for the Fourth Circuit read Title VII's definition of "employer" the same way as the ADEA's definition of employer, noting that the court has rejected the claim of individual liability under the ADEA. 159 F.3d at 180. The court stated:



9

> We already have observed that Title VII is the ADEA's "closest statutory kin." Birkbeck, 30 F.3d at 510 (citations omitted). Thus, reading Title VII to foreclose individual liability represents the only logical extension of Birkbeck. Like the ADEA, Title VII exempts small employers; it would be incongruous to hold that Title VII does not apply to the owner of a five-person company but applies with full force to a person who supervises an identical number of employees in a larger company. See id. We interpret the inclusion of agent in Title VII's definition of employer simply to establish a limit on an employer's liability for its employees' actions. See Birkbeck, 30 F.3d at 510-11; Miller v. Maxwell's Int'l. Inc., 991 F.2d 583, 587 (9th Cir.1993).

Id. Ultimately, the court determined that "[t]o permit individual liability would improperly expand the remedial scheme crafted by Congress," and it reiterated "that supervisors are not liable in their individual capacities for Title VII violations." Id. at 181.

As an initial matter, nowhere in the Plaintiff's complaint does she allege that Wang was her employer; rather, she refers to him as the "owner and operator of Defendant Dunkin' Donuts" as well as her "supervisor." (Entry 1 ¶¶ 3, 11.) Nevertheless, in her objections she asserts that Wang qualifies as her employer because he served in a supervisory position and exercised control over the terms and conditions of her employment. Ultimately, the Court is not persuaded by the Plaintiff's objection. In Lissau, the Fourth Circuit clearly rejected the notion of individual liability under Title VII. As the court stated: "Had Congress felt that individual liability was 'needed to deter unlawful harassment and intentional discrimination,' surely it would have included this remedy in the 1991 Amendments." 159 F.3d at 181 (citations omitted). Accordingly, the Court adopts the R&R's recommendation and grants the Defendants' motion as to the Plaintiff's Title VII claims asserted against Defendant Wang in his individual capacity.

### III.     The Plaintiff's Defamation Claim

The Plaintiff alleges that Defendant Wang defamed her by falsely accusing her of

embezzlement and publishing this falsity to other employees. In the R&R, the Magistrate Judge found the allegations of the Plaintiff's complaint sufficient to state a claim for defamation. The Defendants object to this finding and assert that the Plaintiff has pleaded nothing more than bare allegations without sufficient facts.

After review, the Court finds the Defendant's objection to be without merit. As the Magistrate Judge noted, the Plaintiff has made more than a formulaic recitation of the elements of a defamation claim. The Plaintiff has alleged specific defamatory statement made to Dunkin' Donuts employees, and discovery will permit the Plaintiff to specifically identify those individuals by name. The Court denies the Defendants' motion to dismiss the Plaintiff's defamation claim.

## CONCLUSION

Based on the foregoing, it is hereby

**ORDERED** that the Magistrate Judge's R&R (Entry 14) is adopted, and the Defendants' motion (Entry 7) is granted in part and denied in part. Specifically, the Court grants the motion as to the Plaintiff's Title VII claims asserted against Defendant Wang in his individual capacity. The Court also grants the motion insofar as it finds that paragraphs 21, 22, and 23 of the complaint are non-actionable; that any references to the Plaintiff's third pregnancy are non-actionable; and that no constructive discharge claim exists. Finally, the Court denies the motion with respect to the Plaintiff's defamation claim.

IT IS SO ORDERED.

Sol Blatt, Jr.
Senior United States District Judge

March 31, 2014
Charleston, South Carolina

11